UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES H. JACOBS,

        Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

CASE NO.   C07-5560BHS-KLS

REPORT AND RECOMMENDATION

Noted for August 15, 2008

Plaintiff, James H. Jacobs, has brought this matter for judicial review of the denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Benjamin H. Settle's review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 44 years old.[1] Tr. 29. He has a high school education and past work experience as a loader and firefighter. Tr. 17, 77, 234.

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

On March 11, 2005, plaintiff filed an application for disability insurance benefits, alleging disability as of April 19, 2004. Tr. 11, 56-58. His application was denied initially and on reconsideration. Tr. 29-30, 41, 48. A hearing was held before an administrative law judge ("ALJ") on October 23, 2006, at which plaintiff, represented by counsel, appeared and testified. Tr. 231-45.

On March 26, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of status post bilateral carpal tunnel released and surgical correction of right shoulder;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform light work, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 11-19. Plaintiff's request for review was denied by the Appeals Council on August 21, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981.

On October 9, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1, #3-#4). The administrative record was filed with the Court on January 10, 2008. (Dkt. #9). Specifically, plaintiff argues that decision should be reversed and remanded for further administrative proceedings for the following reasons:

(a) the ALJ erred in evaluating the medical evidence in the record;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in assessing plaintiff's residual functional capacity;

(d) the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy; and

(e) the Appeals Council erred in failing to properly consider new evidence.

The undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, and, for the reasons

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION
Page - 2

set forth below, recommends that the ALJ's decision should be reversed and that this matter be remanded to the Commissioner for further administrative proceedings.

### DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Erred in Evaluating the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

REPORT AND RECOMMENDATION
Page - 3

either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; see also <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

At step three of the sequential disability evaluation process,[3] the ALJ made the following findings:

> In this case, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. Although the medical evidence has shown some pain, sensory loss, and discomfort involving the claimant's hands and right shoulder, the objective medical evidence does not show inability to perform fine and gross manipulations. His symptoms do not reach the severity criteria defined in any neurological or musculoskeletal listing.

Tr. 16. Plaintiff argues the ALJ erred in finding his pain, sensory loss and discomfort in both his hands and his right shoulder did not affect his ability to perform fine and gross manipulation. Plaintiff further argues the ALJ also erred by failing to note that he had reduced range of motion and weakness in his shoulder, and that these symptoms affected his ability to reach, lift, carry, and handle. Defendant argues that the ALJ did not find plaintiff's pain, sensory loss and discomfort had no effect on his ability to

---

[3] At this step, the ALJ must evaluate the claimant's impairments to see if they meet or equal the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. <u>Id.</u>

REPORT AND RECOMMENDATION
Page - 4

perform fine and gross manipulation, but rather that they failed to support a finding of no ability in those areas. Defendant argues as well that the ALJ's determination to limit plaintiff to only light work accommodates the symptoms caused by his hand and right shoulder impairments.

Plaintiff asserts that the ALJ's phrasing of the above findings is so imprecise as to defy definitive interpretation. The undersigned disagrees. The ALJ's statement is quite clear. He found that the medical evidence in the record failed to support a finding that pain, sensory loss and discomfort in plaintiff's hands and right shoulder resulted in an inability – i.e., no ability – to perform fine and gross manipulations. This determination by the ALJ was not erroneous, as there is no indication in the medical evidence in the record that plaintiff is completely unable to perform such manipulations. Plaintiff is correct, however, in arguing that the ALJ's findings regarding fine and gross manipulations fail to indicate exactly what limitations he may have had in performing them.

To the extent the ALJ provided any such indication, it appears he felt plaintiff had no manipulative limitations. In assessing plaintiff's residual functional capacity ("RFC"), the ALJ only limited plaintiff to performing light work activity, without any indication of other non-exertional limitations, such as fine or gross manipulation. See Tr. 16. Defendant's assertion that the ALJ's assessment of plaintiff's RFC accommodates this additional limitation is without merit. While the definition of light work adopted by the ALJ limited plaintiff in the amount and frequency of weight he can lift, lifting an item is not at all the same task as manipulating it. Indeed, a restriction on the ability to manipulate is a non-exertional (i.e., non-strength-related) limitation, whereas as a restriction to light work is an exertional (i.e., strength-related) limitation. See SSR 96-8P, 1996 WL 374184 *5-6 (describing exertional versus non-exertional capacities in the context of assessing RFC).

As argued by plaintiff, however, the record does contain evidence that plaintiff's pain, sensory loss and discomfort in his hands and right shoulder have had at least some effect on his ability to both perform manipulations and to reach. In late April 2004, Mark Hansen, M.D., found plaintiff had "limited range of motion" in his right shoulder, and restricted him to "[n]o use of the right upper extremity for two weeks." Tr. 124. In early June 2004, W. Brandt Bede, M.D., diagnosed plaintiff with both bilateral carpal tunnel syndrome and tendinitis in his right shoulder, and opined that "[a]t the present time he is not able to return to gainful employment at light or full duty status." Tr. 190.

REPORT AND RECOMMENDATION
Page - 5

1    In addition, while progress notes from Dr. Bede in 2004 and 2005, did reveal fairly unremarkable
2    findings and improvement in plaintiff's symptoms at times (See Tr. 168-69, 172, 178-80, 182-85, 188-90,
3    200), Dr. Bede also periodically indicated there should be "[n]o work" for him (Tr. 169, 178-79, 183), or at
4    least no work at his prior job (Tr. 168).  Dr. Bede's 2006 and 2007 findings reveal continued improvement
5    and lack of markedly severe symptoms (Tr. 199, 226-28), but in light of his earlier findings, it is not clear
6    he felt plaintiff would be able to return to work.

7    Other evidence in the record as well strongly indicates that plaintiff has at least some limitation in
8    his ability to perform fine and gross manipulation.  For example, in early September 2004, a state agency
9    examiner who completed a physical residual functional capacity assessment form found that plaintiff was
10   restricted to light work, with further limitation to occasional handling (gross manipulation) in both hands
11   and to never reaching overhead on his right. Tr. 148.  Indeed, the ALJ found this examiner's assessment
12   that plaintiff had the residual functional capacity to perform light work to be more consistent with the
13   evidence in the record, medical and otherwise, than another less restrictive one performed by a licensed
14   physician in early May 2005. See Tr. 16, 161-67.  The ALJ erred, however, in not adopting, or explaining
15   why he was not adopting, the handling and reaching limitations found by the first examiner.

16   The record also shows that plaintiff underwent a program of physical therapy between late March
17   2005, and late May 2005. Tr. 152, 154-55, 158-59.  While progress notes from that period indicate there
18   was improvement in the functioning of plaintiff's right shoulder, the physical therapist noted problems
19   with plaintiff's hands continued to affect his recovery.  For example, in late April 2005, although plaintiff
20   was observed to be "certainly within expected norms," problems with his hands were thought to be
21   "slowing up" progress in therapy. Tr. 158.  At that time, the physical therapist also reported that plaintiff
22   "could probably return to many of his work duties," with the exception, however, of "lifting over shoulder
23   height." Tr. 155.

24   In early May 2005, plaintiff still was "not able to lift overhead with any more than 10 pounds" at
25   that point. Tr. 154.  Later that month, again it was noted that his hands were "limiting his return to work,"
26   and that he "could be released for at least light duty work for the shoulder." Id.  However, the physical
27   therapist specifically stated that plaintiff would not be able to "return to the job of record due to the heavy
28   lifting and overhead lifting" it required. Id.  In a May 23, 2005 letter to Dr. Bede, furthermore, the physical

therapist opined in relevant part as follows:

> The big problem that we have been having is continued c/o pain and paresthesias into his hands.  His ability to use his hands while grasping has affected his ability to advance his shoulder program.  Repetitive activities or repetitive lifting is also affected by his hand symptoms.
> . . . I believe that he could probably be released for at least light duty activities with limitations, especially with over the shoulder or overhead lifting and reaching.
> At this point in time, it appears that in order for him to be able to return to work, addressing his hand situation would be appropriate. . . .

Tr. 152.

Although a performance-based physical capacities evaluation that was conducted in mid-March 2006, which the ALJ accorded "substantial weight," "demonstrated minimal limitations of endurance activities related to his right shoulder and bilateral wrist/hands" (Tr. 17, 205), the other evidence in the record discussed above calls this finding into question.  Nevertheless, because, as shown, there remains an issue as to the exact extent of plaintiff's limitations in reaching and fine and gross manipulation, remand for re-consideration thereof is appropriate.  As to plaintiff's assertion that the ALJ failed to take note that his right shoulder symptoms affected his ability to lift and carry, the undersigned finds no error here.  None of the medical evidence in the record shows plaintiff is more limited in the amount of weight he can lift and carry than found by the ALJ – in other words, that which is required to perform light work, or lifting no more than 20 pounds and carrying up to 10 pounds frequently. Tr. 16.

II.     The ALJ Erred in Assessing Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  <u>Allen</u>, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  <u>Id.</u> at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is

REPORT AND RECOMMENDATION
Page - 7

1  malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

2  Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v.

3  Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

4       In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

5  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

6  testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ

7  also may consider a claimant's work record and observations of physicians and other third parties

8  regarding the nature, onset, duration, and frequency of symptoms. Id.

9       Although not expressly stated in his decision, the ALJ first appears to have discounted plaintiff's

10 credibility because his subjective complaints were not fully supported by the medical evidence in the

11 record. Tr. 16-17. A determination that a claimant's complaints are "inconsistent with clinical

12 observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166

13 F.3d 1294, 1297 (9th Cir. 1998). Specifically, as discussed above, the ALJ found the determination by the

14 state agency examiner in early September 2004, to be more consistent with both the medical evidence and

15 subjective complaints in the record. Tr. 16. Also as discussed above, the ALJ accorded substantial weight

16 to the mid-March 2006, performance-based physical capacities evaluation. Tr. 17. The ALJ, however, as

17 explained previously, failed to fully consider the evidence in the record indicating plaintiff appeared to

18 have at least some limitations in reaching and fine and gross manipulation. Thus, to the extent that the

19 ALJ did discount plaintiff's credibility on this basis, he committed error, as it cannot be said for certain

20 that it constituted a valid basis for doing so.

21       The ALJ also found as follows:

22  The claimant discussed the limitations of performing his activities of daily living. He is single and has a roommate who does such things as change the linen on his bed. He
23  does his own laundry once in awhile. He makes lunch every day, but his roommate does most of the cooking. He goes shopping once a week and that takes 1½ hours. His
24  landlord mows the lawn and he does not [sic] outside work. He attends church once a month for one hour and helps do some painting and cleaning up at the church for 2-3
25  hours a month. He does no other volunteer work, and does not go to the movies, fishing, camping, hunting, or do other sports. He does not do maintenance on his
26  pickup. He watches television, and goes to a local car show. He walks two to three times a week for 30 minutes. . . .
27
28  If a claimant is able to perform household chores such as described above and perform other activities that involve many of the same tasks as a particular type of job, it is reasonable to conclude that pain would not prevent him from working . . .

REPORT AND RECOMMENDATION
Page - 8

Tr. 16-17. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

  Plaintiff argues this reason for discounting his credibility is both insufficiently specific and not convincing. The undersigned agrees. According to the activities set forth by the ALJ above, plaintiff basically does laundry "once in awhile," makes lunch, goes shopping once a week, attends church and volunteers there approximately 3-4 hours per month combined, watches television, goes to a local car show, and walks two to three times per week for 30 minutes. Tr. 16. The nature and frequency of these activities hardly demonstrate that plaintiff performs them for a substantial part of his day or that they are transferable to a work setting. The ALJ, accordingly, erred in relying on them as a basis for discounting plaintiff's credibility.

  Lastly, the ALJ discounted plaintiff's credibility in part because Dr. Bede reported in September 2005, that plaintiff "continued to seek retraining," after having advised him about vocational services, commenting further that:

> . . . Clearly, his treating physician [Dr. Bede] did not consider the claimant to be permanently disabled. Approximately one year later, the claimant testified that he was attempting an occupation as a truck driver in spite of his impairments. He was doubtful if he could sustain the work as a truck driver, however, as will be shown, he retains the capacity to work in other less strenuous occupations.

Tr. 17. Citing Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), plaintiff argues the fact that he was seeking retraining is not in itself a convincing reason to reject all of this testimony regarding his symptoms and limitations. The undersigned disagrees, however, that the ALJ erred here.

  First, Lingenfelter is distinguishable on its facts. In that case, the claimant was fired from a job he had performed for a period of nine weeks after his date last insured, "because he was too slow to do the work adequately." Id. at 1033. The claimant also testified that "when he returned home from work each day his 'feet were so swollen,' and that he 'just couldn't do it anymore' because of the pain." Id. (quoting plaintiff). The Ninth Circuit stated that the mere "fact that a claimant tried to work for a short period of

REPORT AND RECOMMENDATION
Page - 9

time and, because of his impairments, *failed*," does not mean "that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment." Id. at 1038 (emphasis in original). The Court of Appeals found this reason to be "especially unconvincing" where the claimant attempted to work "only because of extreme necessity," because "[u]nder these circumstances," it was "at least as likely that the claimant tried to work in spite of his symptoms, not because they were less severe than alleged." Id. at 1038-39 (quoting ALJ).

Here, however, the only job the record indicates plaintiff performed after his alleged onset date of disability, was one he performed as a watchman for three weeks in June 2006. Tr. 236. In addition, that job ended due to factors other than his impairments and limitations. Id. The Ninth Circuit in Lingenfelter further expressly noted that the claimant's "failed work attempt did not even take place during the relevant time period" – i.e., the period between the alleged onset date of disability and date last insured. Id. at 1039 (noting claimant had burden to prove he was disabled for at least twelve month period during that time). Clearly, the watchman job in this case took place well within the relevant time period here. See Tr. 13 (noting December 31, 2009, as being plaintiff's date last insured). While plaintiff also did testify that he was not sure he could physically drive a truck despite his attempts to retrain in that area (Tr. 242), this is not the same as actual evidence that he tried and failed to do so.

As pointed out by defendant, furthermore, the ALJ here did not state that Dr. Bede found plaintiff to be not limited in his ability to work, but merely that Dr. Bede did not consider him to be permanently disabled. This statement is supported by the medical evidence in the record, as nowhere in Dr. Bede's progress notes was such an opinion or finding offered. Indeed, the fact that plaintiff was advised by Dr. Bede to seek retraining, strongly indicates he believed plaintiff to be capable of at least some work. That plaintiff then did pursue such retraining further indicates that plaintiff himself felt he could perform work, although he may not have been sure of his ability to drive a truck. However, given the above errors the ALJ made in evaluating the medical evidence in the record, it is not clear what capacity, if any, plaintiff retained to perform other less strenuous work as found by the ALJ. Accordingly, for this reason, remand for further assessment of plaintiff's credibility is required as well.

Defendant argues new evidence provided by plaintiff and submitted for the first time to the Appeals Council, shows plaintiff was not forthcoming about his performance of heavy work activity for

REPORT AND RECOMMENDATION
Page - 10

about five months prior to the administrative hearing. For example, on March 9, 2007, Dr. Bede reported in relevant part as follows:

> . . . [T]his gentleman was employed at Com Steele in Bellingham between April 1 and September 30, 2006. His work required significant physical activity with drilling of metals, lifting and carrying of heavy metal objects. . . .

Tr. 227. Plaintiff argues that this is a *post hoc* rationalization, which the Court cannot use to affirm the ALJ's credibility determination. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss).

Defendant, citing Warre v. Commissioner of Social Security Administration, 439 F.3d 1001 (9th Cir. 2006), argues it is not a *post hoc* rationalization to point out "additional support for the Commissioner's and the ALJ's position." Id. at 1005, n.3. The additional support the Commissioner relied on in Warre, and which the Ninth Circuit found acceptable, however, was evidence that already had been referenced in the record before the ALJ. Id. Here, on the other hand, the information concerning plaintiff's work that was reported by Dr. Bede in early March 2007, never was before the ALJ. Just as an ALJ may not be penalized for not having considered evidence not before him or her, so too will the Commissioner not be allowed to rely on evidence not before the ALJ to support the ALJ's decision.

Plaintiff further argues that the Commissioner's attempt to rely on Dr. Bede's statement here is especially misguided, because it is incorrect, noting plaintiff's testimony at the hearing that he worked as a watchman for three weeks in June 2006. Plaintiff's testimony, however, does not establish that Dr. Bede was incorrect, but merely that it was inconsistent therewith. That is, while it is clear there is a lack of consistency between what plaintiff testified to and what Dr. Bede reported, it is not at all clear which of their statements are correct. The undersigned again, however, need not determine whether remand should be ordered on this issue, because remand already is in order for the other reasons set forth herein, although certainly this conflict in the evidence should be resolved upon re-consideration.

III. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can

do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, as noted above, the ALJ found plaintiff to have the residual functional capacity to perform "light work activity," which the ALJ described as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, we determine that he can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods.

Tr. 16; see also 20 C.F.R. § 404.1567(b). Plaintiff argues the above RFC assessment is erroneous because the ALJ failed to properly consider the medical evidence in the record, as well as his own testimony and other statements. The undersigned agrees. As discussed above, the ALJ erred in evaluating the medical evidence in the record concerning plaintiff's hands and shoulder impairments and in discounting plaintiff's credibility. As such, it is not clear the residual functional capacity with which the ALJ assessed plaintiff contains all of his limitations.

In assessing plaintiff's residual functional capacity, the ALJ stated that he was according substantial weight to the March 2006 performance-based physical capacities evaluation, as it was "supported by the objective medical evidence of record." Tr. 17. Plaintiff argues the ALJ erred in relying on this evaluation in making his RFC findings. First, plaintiff asserts the evaluator is not an acceptable medical source, and thus, by implication, should be given less weight because of that. However, although such opinion sources may be given less weight than those of acceptable medical sources, evidence

therefrom certainly may be used to "show the severity" of a claimant's impairments and their effect on the claimant's ability to work. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d). Thus, this alone is not a valid basis for challenging the ALJ's findings here.

Plaintiff next argues the evaluator's opinion does not provide a sufficient evidentiary basis to reject all of the medical evidence in the record, which shows he continued to experience pain, numbness and limitations in his hands and right shoulder. The undersigned agrees. As discussed above, the ALJ erred in failing to properly consider the medical evidence in the record indicating that plaintiff had limitations in both of his hands and his right shoulder. Also as discussed above, the ALJ failed to consider the physical capacities evaluation findings in light of that evidence. Thus, to this extent, the ALJ erred in relying on the evaluation's findings in assessing plaintiff's residual functional capacity.

Plaintiff further argues that the evaluation's findings do not support her conclusion that he was capable of performing medium level work. While perhaps true – although the undersigned does not so specifically find here – as noted above, the ALJ apparently did not agree with that conclusion, as he limited plaintiff to performing only light work. This too, though, raises the issue of exactly to what extent the ALJ actually adopted the evaluation's findings, given that he stated the findings found in that evaluation were supported by the medical evidence in the record, and thus accorded substantial weight. In any event, as it already is being recommended that this matter be remanded in part to further consider plaintiff's RFC for other reasons, this issue should be re-considered as well.

Plaintiff further asserts evidence from Dr. Bede in early March 2007, two weeks prior to the date of the ALJ's decision, shows he had limited range of motion, some tenderness and weakness, and positive impingement testing and abduction in his right shoulder. See Tr. 227-28. This evidence, however, while indicating that plaintiff was exhibiting some symptoms in his right shoulder, does not alone demonstrate that he was having specific work-related limitations at the time. Again, though, while such evidence itself would not support a remand for further consideration of the ALJ's residual functional capacity assessment, this evidence too should be considered along with the other medical evidence on remand.

Lastly, plaintiff argues that an MRI and evaluation of plaintiff's shoulder performed two months later, and thus after the ALJ had issued his decision, confirmed plaintiff was having serious problems with his shoulder. The ALJ, however, cannot be faulted for not considering evidence that was not before him

REPORT AND RECOMMENDATION
Page - 13

when he issued his decision. While it is not clear that evidence is sufficient in itself to warrant remand to the Commissioner, as discussed below, the undersigned need not resolve that issue, since, as noted above, other reasons support remand of this matter for further consideration of the medical evidence in the record. Thus, on remand, all relevant medical evidence, including the above, should be considered.

IV.     The ALJ's Step Five Findings

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

Based on the residual functional capacity with which he assessed plaintiff, the ALJ concluded that considering his age, education and work experience, "a finding of 'not disabled'" was directed by Grid Rule 202.21. Tr. 18. The ALJ further concurred with "the State agency finding" plaintiff to be capable of performing "such sedentary to light unskilled jobs" as conveyor line bakery worker, fruit distributor and surveillance-system monitor. Id. Plaintiff argues that his pain and other non-exertional manipulative and reaching limitations precluded the ALJ from relying on the Grids alone, but instead was required to obtain the testimony of a vocational expert. The undersigned agrees.

The Grids may be used if they "*completely and accurately* represent a claimant's limitations." Tackett, 180 F.3d at 1101 (emphasis in the original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." Id. (emphasis in the original). If the claimant "has significant non-exertional impairments," however, reliance on the Grids is not appropriate.[4] Ostenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1102 (non-exertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids). "Examples of non-exertional limitations are pain, postural limitations, or environmental limitations." Tackett, 180 F.3d at 1102.

Given the questions remaining concerning the extent of plaintiff's limitations in the use of both of

---

[4] As noted above, "[e]xertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION
Page - 14

1 his hands for fine and gross manipulation, and in reaching with his right shoulder, it is not clear the ALJ
2 properly relied solely on the Grids to find plaintiff disabled.  This is an issue that also must be resolved on
3 remand.  Thus, if on remand, it is determined that plaintiff does have limitations in his hands and/or right
4 shoulder that affect his ability to perform work-related functions, reliance on the Grids would be improper,
5 and, therefore, the testimony of a vocational expert would be required prior to determining whether or not
6 plaintiff is disabled at step five of the sequential disability evaluation process.

7 V.        The New Evidence Submitted to the Appeals Council

8          Plaintiff argues the Appeals Council erred in failing to properly consider medical evidence that was
9 submitted to it for the first time documenting that his hand and shoulder impairments continued to cause
10 him significant pain and functional limitations.  See Tr. 223-230.  In its notice declining plaintiff's request
11 for review, the Appeals Council stated that it had considered the submitted evidence, but found that it did
12 "not provide a basis for changing" the ALJ's decision. Tr. 4-5.  Defendant argues the Appeals Council's
13 decision is not subject to the Court's review, because it is not a final agency decision.  Judicial review is
14 clearly limited to a "final decision" of the Commissioner "made after a hearing." Califano v. Sanders, 430
15 U.S. 99, 108 (1977); see also 42 U.S.C. § 405(g).  As noted above, if the Appeals Council denies a request
16 for review, "the decision of the ALJ represents the final decision of the Commissioner." Batson, 359 F.3d
17 at 1193 n.1; see also 20 C.F.R. §§ 404.968, 404.981.

18          Accordingly, the ALJ's decision, and not the Appeals Council's denial of plaintiff's request for
19 review, is the final agency decision in this case, and thus the only one subject to review.  However,
20 plaintiff is correct in arguing – and, indeed, defendant also acknowledges – that the Court may consider
21 additional evidence submitted for the first time to the Appeals Council, to determine whether the ALJ's
22 decision is supported by substantial evidence and free of legal error.  See Ramirez, 8 F.3d 1449, 1451-52
23 (9th Cir. 1993); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000); Gomez v. Chater, 74 F.3d 967, 971
24 (9th Cir. 1996) (evidence submitted to Appeals Council is part of record on review to federal court).  As
25 discussed above, though, none of the newly submitted evidence is necessary for this Court to determine
26 whether to remand this matter for further administrative proceedings, as there already are sufficient
27 reasons to do so, as discussed elsewhere herein.  Nevertheless, for the reasons set forth above, this
28 additional evidence also should be re-considered on remand as well.

1   VI.     This Matter Should Be Remanded for Further Administrative Proceedings

2          The Court may remand this case "either for additional evidence and findings or to award benefits."

3   Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course,

4   except in rare circumstances, is to remand to the agency for additional investigation or explanation."

5   Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in

6   which it is clear from the record that the claimant is unable to perform gainful employment in the national

7   economy," that "remand for an immediate award of benefits is appropriate." Id.

8          Benefits may be awarded where "the record has been fully developed" and "further administrative

9   proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

10  1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Because issues still remain with respect to the medical evidence in the record concerning plaintiff's limitations in fine and gross manipulation and reaching with his right shoulder, his credibility, his residual functional capacity, and his ability to perform other work existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings.

It is true that the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003).  The Court of Appeals in Connett went on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. Id.  Thus, at least where findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears the courts "have some flexibility in applying" that rule. Id.; but see Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in Connett).[5]  In this

---

[5] In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594.  The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id.  It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

REPORT AND RECOMMENDATION
Page - 16

case, as discussed above, it is not entirely clear the evidence in the record is sufficient to support a finding that plaintiff's testimony should be credited as true. Nor, also as discussed above, is it at all clear that the ALJ would be required to find plaintiff's disabled had he found plaintiff credible.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 15, 2008**, as noted in the caption.

DATED this 17th day of July, 2008.

Karen L. Strombom
United States Magistrate Judge